UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALI AL-TIMIMI,

    Petitioner,                                                  CASE NO. 05-CV-10266

v.                                                       DISTRICT JUDGE DAVID M. LAWSON
                                                           MAGISTRATE JUDGE CHARLES E. BINDER

ANDREW JACKSON,

    Respondent.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON PETITION FOR WRIT OF HABEAS CORPUS

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus be **DENIED** and the case be **DISMISSED WITH PREJUDICE**.

### II.    REPORT

#### A.    Introduction

Pending, pursuant to an Order of Reference from United States District Judge David Lawson, is Ali Al-Timimi's Petition for Writ of Habeas Corpus. (Dkt. 1.) The petition, which was filed through counsel on October 6, 2005, argues that Petitioner's rights under the Confrontation Clause of the United States Constitution were violated during his 2002 state court jury trial. Petitioner was convicted of murder in the second degree contrary to Michigan Compiled Laws § 750.317 and sentenced to 15 to 25 years in prison. Petitioner is currently incarcerated at the Mound Correctional Facility in Detroit, Michigan. On November 28, 2005, the petition was

referred to the undersigned Magistrate Judge. (Dkt. 5.) A response to the petition was filed on April 14, 2006, and the Rule 5 materials were subsequently filed on May 5, 2006. Accordingly, the case is ready for Report and Recommendation.

### B. Statement of Pertinent Facts

Petitioner's conviction arose from the death of Waheed Al-Alyawi ("Waheed"), which occurred on October 3, 2001, in Dearborn Michigan. Waheed was riding a motorcycle when he was struck and killed by an automobile driven by Petitioner. (Br. in Supp. of Pet., Dkt. 1 at 1.) Petitioner fled the scene of the accident, but his license-plate number was recorded by two eyewitnesses. (Dkt. 16, Trial Transcript ["TT"] of 10/8/02 at 58 & 67.) When police located and questioned Petitioner, he initially denied having any knowledge of the accident. (*Id.* at 198.) Eventually he admitted that he was in an accident (*id.* at 199-200), but claimed that he did not know the person on the motorcycle whom he had struck and killed. (Dkt. 17, TT of 10/9/02 at 79.) The police later learned, however, that Waheed, the twenty-six-year-old victim, had been romantically involved with Petitioner's sixteen-year-old sister-in-law, Zamen Al-Kasid ("Zamen"), against the family's wishes.

Zamen was taken into protective custody prior to Petitioner's preliminary examination, which was held on October 26, 2001, before the Honorable Virginia Sobotka of the 19th District Court for the City of Dearborn. Zamen testified as a witness for the prosecution and Petitioner was bound over to circuit court on a charge of first degree murder. Following the preliminary examination, it was discovered that the court reporter's equipment had malfunctioned during Zamen's testimony; only five pages could be transcribed. In addition, the court reporter died and a transcript of the remainder of the hearing could not be produced.

2

When Petitioner's trial commenced on October 7, 2002, Zamen could not be located. The trial court found that the prosecution had undertaken diligent efforts to locate her and declared her an unavailable witness. (Dkt. 15, TT of 10/7/02 at 86.) The court also held that, after the five surviving transcript pages of Zamen's preliminary exam testimony were read to the jury, the parties would be allowed to call witnesses who were in the courtroom during the preliminary examination to tell the trial jury what they remembered of Zamen's testimony. (*Id.* at 21.)

The first witness called for this purpose was Judge Sobotka herself, although she was not identified as a judge, but merely as a person who was in the courtroom during the preliminary exam. Judge Sobotka had taken six pages of notes during Zamen's testimony, two-thirds of which were from the direct examination and one-third from the cross-exam. (Dkt. 17, TT of 10/9/02 at 66.) Judge Sobotka referred to her notes as she testified. She told the jury that Zamen had testified that Petitioner, Zamen's sister's husband, had talked to her three times about her relationship with Waheed. During the second of these conversations, which occurred on the way to school, Petitioner had told her that "the marriage would be off and that she would be forbidden to see him" because "[h]e was bad and she would ruin the family." (*Id*. at 59.) The third conversation occurred on the day of the accident, and Judge Sobotka described Zamen's testimony as follows:

> A   She [Zamen] was using the cell phone talking to Waheed when her father discovered her. And he started beating her. She started screaming. The family came into her room.
>
> Q   When you say that she said he started beating her, who was she describing as he?
>
> A   Her father.
>
> Q   Her father was beating her.
>
> A   And at that time when she started screaming then the other members of the family came into her room.

3

Q Okay. Let me back up another second. Did [Zamen] testify about where she had gotten this cell phone that she was caught with?

A From Waheed.

Q Did she describe the purpose for why Waheed had given this cell phone?

A So that he could keep in touch with her.

Q All right. After the family or after her father – she testified that her father found her talking on this cell phone and beat her, what did she describe happened next?

A Her screaming brought the other members of the family into the room.

Q What did she then describe happened?

A After the other family members left, her brother-in-law [Petitioner Al-Timimi] remained.

 . . . .

Q Did she say what it was that Mr. Ali Al-Timimi said to her after he remained to talk to her?

A It started out with that, you cannot marry him. He is bad. You will ruin the family. Then he said that he would take care of him. [H]e would kill him. [A]nd I Haider would kill her.

Q Haider?

A Her brother, Haider.

Q All right. So specifically did she testify that the Defendant said that he would kill Waheed?

A Yes.

Q Did she say – Did she testify as to when he said he would do that?

A He said today he would take care of him. He would kill him and Haider would take care of you and kill you.

Q Do you have those specific, or that specific from the testimony –

4

| | | |
|---|---|---|
| A | | I wrote down the quote. |
| Q | | All right. |

(*Id*. at 60-62.)

The second witness to recount Zamen's preliminary examination testimony was Detective Sergeant Anne Kinitra of the Dearborn Police Department. She told the jury that Zamen had testified that Waheed was her boyfriend and that she was engaged to marry him, although her family disapproved. (*Id.* at 73.) Further, with regard to her brother-in-law, Petitioner Ali Al-Timimi, Detective Kinitra remembered Zamen testifying that:

> He had gone to her school and pulled her out of class, pulled her out of school and told her or asked her are you seeing Waheed, and she denied it to him, saying, no I'm not seeing him, although she was seeing him.

(*Id.* at 74.) As to her final contact with her brother-in-law on the day of Waheed's death:

> Q  Did she testify as to whether Mr. Al-Timimi came to her school and got her out of school that day?
>
> A  Yes.
>
> Q  And what did she say happened after Mr. Al-Timimi got her out of school that day?
>
> A  When they had went home to the house, she was on her cell phone talking to Waheed, and I believe her father walked in and caught her on the phone talking to him and became upset.
>   . . . .
>   He became very upset and I think struck her.
>
> Q  Did she say what happened after that?
>
> A  She was kept in a room, in her room, made to stay in her room. And then Ali came in.
>
>   . . . .
>   He came in and told her that you better not see him, and if you – I'm going to kill Waheed and Haider, Haider is her brother. Is Zamen's brother. Will kill you.

5

> Q    Do you specifically remember Zamen Al-Kasid testifying under oath that Mr. Ali Al-Timimi told her that he was going to kill Waheed?
>
> A    Yes.

(*Id.* at 75-76.) On cross-examination, Detective Kanitra stated that she did not take notes during the preliminary examination, and that she was recalling Zamen's testimony strictly from memory. She also stated that she did not remember which facts were brought out during the direct examination as opposed to those elicited on cross-examination. (*Id.* at 85.)

The final witness to recall Zamen's preliminary examination testimony for the jury was Detective Sergeant Paul Keiper of the Dearborn Police Department. His recollection of her testimony was consistent with that of the other two witnesses. He stated that

> A short time later [after her father slapped her], Ali Al-Timimi came into the room. He was again upset with her over not listening to what the family had said and he told her that he was going to kill Waheed and that her brother Haider was going to kill her.

(*Id.* at 92-93.)

The defense elected not to call any witnesses who were in the courtroom during the preliminary examination to testify as to their recollection of Zamen's testimony.

At the conclusion of the five-day trial, the jury was instructed on the elements of first-degree murder, second-degree murder, involuntary manslaughter, and negligent homicide. (Dkt. 18, TT of 10/10/02 at 194-200.) The jury found Petitioner guilty of second-degree murder, and he was subsequently sentenced to 15 to 25 years in prison.

### C.    Post-Conviction Procedural History

On September 9, 2003, Petitioner filed through counsel an appeal brief with the Michigan Court of Appeals, raising the following two claims:

6

> I. WERE THE DEFENDANT'S SIXTH AMENDMENT RIGHTS TO CONFRONT AND CROSS-EXAMINE THE WITNESSES AGAINST HIM VIOLATED BY THE ADMISSION AT TRIAL OF A GROSSLY INCOMPLETE RECONSTRUCTION OF THE PRELIMINARY EXAMINATION TESTIMONY OF PERSONS PRESENT WHEN THE FORMER TESTIMONY WAS ORIGINALLY GIVEN AND WAS SUCH A RECONSTRUCTION INADMISSIBLE IN ANY EVENT WHERE IT FAILED TO INCLUDE ALL OF THE SUBSTANCE OF THAT WITNESS TESTIMONY, INCLUDING THAT GIVEN ON CROSS-EXAMINATION?
>
> II. DID THE TRIAL COURT ERR IN SCORING 15 POINTS UNDER THE SENTENCING GUIDELINES FOR OFFENSE VARIABLE 5, WHICH REQUIRES THAT A SERIOUS PSYCHOLOGICAL INJURY REQUIRING PROFESSIONAL TREATMENT OCCURRED TO A MEMBER OF THE VICTIM'S FAMILY?

(Rule 5 Materials, Dkt. 25, Defendant-Appellant's Brief on Appeal at vii.)

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence in a five-page unpublished opinion. (Rule 5 Materials, Dkt. 25, *People v. Al-Timimi*, No. 245211, 2004 WL 1254271 (Mich. Ct. App. June 8, 2004).)

Petitioner appealed to the Michigan Supreme Court. On March 23, 2005, leave to appeal was denied because the court was "not persuaded that the questions presented should be reviewed by this Court." (Rule 5 Materials, Dkt. 26, *People v. Al-Timimi,* No. 126725 (Mich. 2005)).

On October 6, 2005, Petitioner filed through counsel his Petition for Writ of Habeas Corpus, presenting the following claim for relief:

> I. PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHTS TO CONFRONT AND TO CROSS EXAMINE THE WITNESSES AGAINST HIM WHEN HIS CHIEF ACCUSER WAS NOT PRODUCED FOR TRIAL AND, IN THE ABSENCE OF THE PRELIMINARY EXAMINATION TRANSCRIPT, THE DISTRICT COURT MAGISTRATE AND TWO POLICE OFFICERS TESTIFIED BEFORE THE JURY AS TO WHAT THEY BELIEVED HER TESTIMONY WAS.

(Pet., Dkt. 1 at 3.)

### D.     Law and Analysis

### 1.     Standard of Review

Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 1519, 146 L. Ed. 2d 389 (2000).  A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or if the state court either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context.  *Id.* at 1520.  The state court decision, however, need not cite Supreme Court precedent, or even reflect awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam).

**2.      Confrontation Clause Claim**

The Confrontation Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Petitioner's sole claim in his habeas petition is that his Sixth Amendment right to confront his accuser was violated by the admission of Zamen Al-Kasid's preliminary examination testimony by means of the recollection of persons who were present at the hearing.

**a.      State Court Record**

Petitioner clearly presented his federal Confrontation Clause claim to the Michigan Court of Appeals by arguing that the admission of an incomplete account of Zamen's preliminary examination testimony through the testimony of others failed to satisfy the constitutional requirement of a guarantee of trustworthiness as set forth in *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). (Rule 5 Mat., Dkt. 25, Br. on Appeal at 24.) The claim was addressed at length and decided as follows:

> Defendant contends that the trial court erred in admitting the testimony of three witnesses, who testified regarding the statements made by Zamen Al-Kasid at defendant's preliminary examination. At the preliminary examination, Al-Kasid testified that defendant told her he would kill the victim. Defendant does not contest that a complete transcript of the preliminary examination could not be prepared. Moreover, the question of Al-Kasid's unavailability is not at issue in this appeal. Instead, defendant argues that the admission of the three witnesses' testimony violated his constitutional rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution because the testimony constituted an incomplete record of Al-Kasid's statements.
>
> In *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), abrogated in part by *Crawford v. Washington*, ___ U.S. ___, 124 S. Ct. 1354, ___ L. Ed. 2d (2004), the United States Supreme Court addressed the interplay between the admission of hearsay evidence and the Confrontation Clause. The Court recognized that it has tried to accommodate the various competing interests at stake. *Id*. at 64. The Court stated:

> The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.
>
> The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that there is no material departure from the reason of the general rule. The principle recently was formulated in *Mancusi v. Stubbs* [408 U.S. 204, 213, 92 S. Ct. 2308, 33 L. Ed. 2d 293 (1972)]:
>
>> The focus of the Court's concern has been to insure that there are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant, and to afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these indicia of reliability.
>
> The Court has applied this indicia of reliability requirement principally by concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the substance of the constitutional protection. This reflects the truism that hearsay rules and the Confrontation Clause are generally designed to protect similar values, and stem from the same roots. It also responds to the need for certainty in the workaday world of conducting criminal trials.
>
> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate indicia of reliability. [*Roberts*, *supra* at 65-66 (certain citations and internal quotations omitted).]

In *Crawford, supra* at 1374, the Court stated that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy

10

> constitutional demands is the one the Constitution actually prescribes: confrontation." In other words, there must have been an opportunity for cross-examination. *Id.* Here, it is undisputed that defendant had the opportunity to cross-examine Al-Kasid at the preliminary examination. Therefore, the admission into evidence of Al-Kasid's preliminary examination testimony did not violate defendant's rights under the Confrontation Clause.

(Rule 5 Materials, Dkt. 25, *People v. Al-Timimi*, No. 245211, at 1-2 (Mich. Ct. App. June 8, 2004) (unpublished) (citation form altered)).

**b.** **Discussion**

Petitioner is only entitled to a writ of habeas corpus if the state court decision was contrary to or involved an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). "When analyzing whether a state court's decision is 'contrary to' or an 'unreasonable application of' clearly established federal law, this court may only look to Supreme Court precedent as of the time of the state court's decision." *Fowler v. Collins*, 253 F.3d 244, 249 (6th Cir. 2001).

When Petitioner's appeal brief was filed on September 9, 2003, Confrontation Clause challenges were analyzed according to the rule of *Ohio v. Roberts, supra,* which provided that hearsay statements by unavailable declarants were only admissible if they bore "adequate indicia of reliability" by either "fall[ing] within a firmly rooted hearsay exception" or possessing "particularized guarantees of trustworthiness." *Roberts,* 448 U.S. at 66. One of Petitioner's arguments is that Judge Sobotka, Detective Kanitra, and Detective Keiper were all biased against Petitioner[1] and therefore their hearsay testimony recounting Zamen's preliminary examination

---

[1] Petitioner argues that Judge Sobotka was biased because her duty at the preliminary examination was not to determine guilt or innocence, but to determine whether the prosecution had presented evidence on all elements of a crime. (*Id*. at 13.) Therefore, the argument apparently goes, she was paying more attention during the prosecutor's direct examination than the defense attorney's cross-exam. With regard to the police officers, Petitioner alleges that their recollection was biased because police officers are engaged in the "often competitive enterprise of law enforcement." (*Id*. at 14.)

11

testimony was untrustworthy, unreliable, and in violation of the Confrontation Clause. (Dkt. 1, Br. in Supp. of Pet. at 13-14.)

On March 8, 2004, however, three months before the Michigan Court of Appeals' decision in Petitioner's case, the U.S. Supreme Court overruled the adequate-indicia-of-reliability test from *Roberts* and held that an out-of-court statement by a witness that is "testimonial" in nature is barred unless the witness is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) ("Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.").

In this case, Petitioner does not dispute that Zamen's statements at the preliminary examination were "testimonial" in nature, nor could he do so. *See Crawford, supra,* at 68 (leaving for another day any effort to spell out a comprehensive definition of "testimonial," but stating that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing . . . ."). Further, Petitioner does not dispute that Zamen Al-Kasid was "unavailable" to testify at the trial. Therefore, as Respondent contends, there is no question that, had a complete transcript of Zamen's preliminary hearing testimony been available, it would have been admissible at trial. It thus follows that what Petitioner really takes issue with is the <u>manner</u> in which Zamen's prior testimony was presented to the jury – through the testimonial account of three eyewitnesses.

The only Supreme Court case Petitioner cites in support of his argument that this manner of presentation was unconstitutional is *California v. Green*, 399 U.S. 149, 165, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970). Petitioner asserts that *Green* stands for the proposition that "admission of former testimony in a criminal case is dependent on four conditions being met. These are: 1) the declarant was under oath at the preliminary hearing; 2) the accused was represented at the

preliminary hearing by the same counsel who later represented him at the trial; 3) the accused had every opportunity at the preliminary hearing to cross examine the declarant as to his statement, and 4) the proceedings at the preliminary hearing were conducted before a judicial tribunal, *equipped to provide a judicial record of the hearing*." (Dkt. 1, Br. in Supp. of Pet. at 14-15 (emphasis added).)

Respondent counters that, first, *Green* set forth no such four-factor test, and second, even if it did, it is no longer good law in light of *Crawford*'s bright-line two-factor test: unavailability and a prior opportunity for cross-examination. (Dkt. 7, Ans. in Opp. at 7.) I suggest that Respondent is correct on both counts. In *Green*, the Court was not faced with the case of an unavailable witness. Instead, the California Supreme Court had held that the preliminary examination testimony of a witness who was available and testified at trial, but who claimed at trial that he could no longer remember the events in question, could not be used as substantive evidence of guilt pursuant to the Confrontation Clause. The U.S. Supreme Court reversed, holding that

> the Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories.

*Green*, 399 U.S. at 164. This case is clearly distinguishable since here the declarant was unavailable at trial. Furthermore, the four-factor "test" that Petitioner claims *Green* set forth was stated in a paragraph of *dicta* where the Court was bolstering its holding by comparing the situation before it to a situation where a declarant is actually unavailable at trial:

> We also think that Porter's preliminary hearing testimony was admissible as far as the Constitution is concerned wholly apart from the question of whether respondent had an effective opportunity for confrontation at the subsequent trial. For Porter's statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial. Porter was

13

> under oath; respondent was represented by counsel – the same counsel in fact who later represented him at the trial; respondent had every opportunity to cross-examine Porter as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings. Under these circumstances, Porter's statement would, we think, have been admissible at trial even in Porter's absence if Porter had been actually unavailable, despite good-faith efforts of the State to produce him. That being the case, we do not think a different result should follow where the witness is actually produced.

*Green*, 399 U.S. at 165. Read in context, this paragraph certainly did not set forth a four-factor test for the admission of prior testimony when a declarant is unavailable, but rather was merely part of the Court's attempt to show by analogy that its reasoning in the case before it was sound. Therefore, I suggest that *California v. Green* cannot be considered "clearly-established Federal law, as determined by the Supreme Court" for purposes of Petitioner's case. "Under AEDPA, if there is no 'clearly established Federal law, as determined by the Supreme Court' that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (citing 28 U.S.C. § 2254(d)(1); *Taylor*, 529 U.S. at 412).

Petitioner's final argument is that admission of Zamen's preliminary examination testimony in the manner utilized was improper because it was an incomplete record of her testimony. Petitioner, however, has not cited any U.S. Supreme Court case in support of this proposition. Further, the Michigan Court of Appeals rejected this challenge both factually as well as legally pursuant to state case law:

> Defendant essentially takes issue with the manner in which the prosecution presented Al-Kasid's testimony to the jury. In cases such as *Roberts, supra*, and *People v. Meredith*, 459 Mich. 62; 586 NW2d 538 (1998), the prosecution used transcripts of the preliminary examination testimony in lieu of the declarant's statements. Here, however, a complete transcript could not be used, because the transcript machinery malfunctioned, and the court reporter died before reconstructing the transcripts from her notes. Therefore, the prosecution was forced to admit into evidence the testimony of those who observed Al-Kasid's preliminary examination testimony; the witnesses consisted of the examining magistrate (who nevertheless was not identified as such) and others. Defendant argues that the

witnesses should not have been able to testify because their memories were not complete.  Specifically, defendant contends that the witnesses could not testify regarding the substance of Al-Kasid's testimony during cross-examination.  Defendant argues that a witness who testifies regarding his or her recollection of earlier judicial testimony must be able to offer a complete recollection of the testimony offered on both direct and cross-examination.

Defendant relies on *People v. Sligh*, 48 Mich. 54; 11 NW 782 (1882), as binding authority in this jurisdiction.  In *Sligh*, the Supreme Court ruled that the trial court should not have allowed a trial witness to detail the testimony given at an earlier trial by another witness who had subsequently died.  *Id.* at 58.  The Court recognized the competing interests associated with "allow[ing] depositions of deceased witnesses," *id.* at 57, and stated that "it is very clear that there must be the utmost precaution taken to place it before the jury as nearly as possible as the witness, if living, would have done."  *Id.* at 58.

Any rule gleaned from *Sligh* appears to be countered by the more recent authority cited by plaintiff.  Indeed, in *Gloeser v. Moore*, 284 Mich. 106, 120; 278 NW 781 (1938), our Supreme Court appears to have relaxed any rule that a witness be able to testify with a particular specificity.
. . . .
[T]he *Gloeser* Court implicitly ruled that [the witness] was competent simply to testify with regard to what he observed.

This reasoning is echoed in [Michigan Rule of Evidence] MRE 602, which provides, in part, that:

> [a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony.

Therefore, just as with *Gloeser*, it is sufficient to allow a witness to testify as long as the witness has personal knowledge of the other witness' testimony.  Any failure of a witness to recall the complete detail of another witness' testimony at an earlier proceeding would be relevant to the issue of credibility.  Such a credibility issue is for the jury, and not for an appellate court.  *See, generally, People v. Lemmon*, 456 Mich. 625, 637; 476 NW2d 129 (1998).

Moreover, even assuming that a trial court, before admitting the testimony of a witness who is recalling another's testimony, is required to ensure that the witness be able to recall both the direct examination and the cross-examination from the earlier testimony, defendant's argument fails.  Indeed, defendant fails to demonstrate that the witnesses at issue lacked knowledge about Al-Kasid's testimony on cross-examination at the preliminary examination.  Our review of the witnesses'

15

>  testimony reveals that these witnesses' recollections were not limited to only the direct examination portion of Al-Kasid's testimony. Moreover, defendant had the opportunity to interview and present any other witnesses that may have been present during Al-Kasid's cross-examination. We reject defendant's argument and conclude that the court properly admitted the testimony of the three witnesses in question.

(Rule 5 Materials, Dkt. 25, *People v. Al-Timimi*, No. 245211, at 2-3 (Mich. Ct. App. June 8, 2004) (unpublished)). The state court's factual conclusion that the witnesses' recollections were not limited to merely the direct examination is entitled to the presumption of correctness on habeas corpus review. 28 U.S.C. § 2254(e)(2). In addition, it simply "is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). "A federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. Therefore, to the extent Petitioner claims that the state court decision was contrary to state precedent requiring a "complete" record, it is not cognizable on federal habeas review.

In conclusion, since Petitioner has not demonstrated that the Michigan Court of Appeals "arrived at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decided a case differently than [the Supreme] Court has on a set of materially indistinguishable facts," *Williams*, 529 U.S. at 412-13, I suggest that the petition for writ of habeas corpus be denied.

**III.    REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are

advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                                              s/ *Charles E. Binder*
                                                                              CHARLES E. BINDER
Dated: July 5, 2006                                        United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet Van Cleve, and served in the traditional manner on Larry A. Smith and Honorable David M. Lawson.

Dated: July 5, 2006                                     By      s/Mary E. Dobbick
                                                                 Secretary to Magistrate Judge Binder